**AMERICAN CONSTRUCTION MACHINERY & EQUIPMENT CORPORATION LTD., Petitioner,**

**v.**

**MECHANISED CONSTRUCTION OF PAKISTAN LTD., Respondent.**

No. 85 Civ. 3765 (JFK).

United States District Court, S.D. New York.

March 23, 1987.

Gerald Aksen, Reid & Priest, New York City, for petitioner; Christopher Connolly, of counsel.

Peter M. Bellsey, Dunn & Zuckerman, P.C., New York City, for respondent.

KEENAN, District Judge:

## Background

Petitioner, American Construction Machinery & Equipment Corporation, Ltd. ("ACME"), brings this instant motion to confirm a foreign arbitration award it obtained against the respondent, Mechanised Construction of Pakistan Ltd. ("MCP"). ACME is a Cayman Islands corporation with a Westchester County office. During the relevant activities, the office was located in Tarrytown. MCP is a wholly-owned enterprise of the Pakistan government.

On January 6, 1977, the parties entered a contract that called for ACME to supply MCP with goods and services to be used in MCP's Iraq construction project. The contract included an arbitration clause which stated,

> [a]ny dispute or difference arising between the parties concerning the interpretation of any provision of this agreement or performance or any action taken there-under shall be settled in the first instance directly between the parties and if no such settlement is possible by referring to the International Chamber of Commerce [ICC] at Paris/Geneva for arbitration.

Petition, Exh. A, ¶ 9. The parties entered a Supplementary Agreement dated May 22, 1978, which stated the governing law would be that of Pakistan.

Almost one year later, on May 1, 1979, ACME filed a claim with the ICC. On June 24, 1979, MCP participated in the arbitration proceedings by filing a reply and a counterclaim for $1 million. *See* Connolly Affidavit, Exh. 1, 2. The ICC Court of Arbitration selected Geneva as the site for the arbitration and Max W. Abrahamson, Q.C., was chosen as the sole arbitrator. Petition, Exh. C, ¶¶ 3, 13. After designating authorized representatives, on March 19, 1980 the parties signed the Terms of Reference for the arbitration. Petition, Exh. C, ¶ 2. One of the issues the parties agreed to have arbitrated was what effect, if any, the Supplementary Agreement would have on the original January 6, 1977 Agreement. *Id.*, Exh. C, ¶ 2(d)(i). A hearing was scheduled for June 1 and 2, 1981.

Despite receiving proper notice of the hearing, MCP elected not to attend. *Id.*, Exh. C, ¶¶ 14, 15.

By signing the Terms of Reference, MCP had accepted the Arbitrator's jurisdiction, Geneva as the location of the arbitration, and the use of Geneva's procedural rules. MCP, however, decided to pursue another strategy. In July, 1980, MCP stated that it viewed the arbitration as invalid under the law of Pakistan. It proceeded to petition a court in Lahore, Pakistan for a declaration invalidating both the arbitration and the arbitration clause. In that action, ACME and Arbitrator Abrahamson were named as defendants. *Id.*, Exh. C, ¶ 6. MCP's petition, which according to the Arbitrator contained "omissions and positive misstatements," *id.*, Exh. C, ¶ 8, was granted on January 13, 1981. *Id.*, Exh. C, ¶ 6.

The Arbitrator reached his decision in this case on May 24, 1982. *Id.*, Exh. C. He found in favor of ACME on its claim, and against MCP on its counterclaim. In addition, he determined that even if Pakistani law were applicable, MCP's objections were meritless. *Id.*, Exh. C, ¶¶ 8–12. New York law was found to govern the January 6, 1977 Agreement, *id.*, Exh. C, ¶ 28, and the Supplementary Agreement was held invalid. *Id.*, Exh. C, ¶¶ 20–22. ACME timely filed a petition in this Court on May 17, 1985 to confirm the arbitral award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), which is given the force of United States law at 9 U.S.C. § 201.

In this Court, MCP has previously moved to dismiss the petition to confirm the award on grounds of lack of personal and subject matter jurisdiction and improper venue. The Court rejected these positions, and briefs were filed on the motion to confirm the arbitration award. For the reasons set forth below, the Court confirms the award which directed MCP to pay ACME, (a) $1,402,924.00 including interest up to December 21, 1981; (b) interest at the rate of 17% on that sum from December 22, 1981 until the date of payment; (c) arbitration costs of $45,057.57; and (d) ACME's legal costs calculated at $87,500.00. *Id.*, Exh. C, ¶ 31.

## DISCUSSION

On a motion to confirm an arbitral award entered pursuant to the Convention, a federal court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Respondent raises several of the defenses set forth in Article V of the Convention. First, it is asserted that the arbitration agreement "is not valid under the law to which the parties have subjected it." *See* 9 U.S.C. § 201, note, Article V, 1(a). Second, respondent argues that the award contains decisions on matters beyond the scope of the arbitration agreement. *See id.*, Article V, 1(c). Third, respondent states that "the arbitral authority of the arbitral procedure was not in accordance with the agreement of the parties...." Answer, ¶ 18. Finally, respondent claims that the award has been set aside "by a competent authority of the country in which, or under the law of which, that award was made." *See* Article V, 1(e). Two defenses not found within Article V(1) are also presented: the arbitration agreement should be vacated as contrary to United States public policy and the award was in "manifest disregard" of the applicable law. The Court rejects each of these defenses.

■ As a preliminary matter, the Court notes that there is a "general pro-enforcement bias" manifested in the Convention. *See Parsons & Whittemore Overseas Co. v. Societe Generale de l'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974). The party opposing confirmation of the award bears the burden of proof. *La Societe Nationale v. Shaheen Natural Resources Co., Inc.*, 585 F.Supp. 57, 61 (S.D.N.Y.1983), *aff'd*, 733 F.2d 260 (2d Cir.), *cert. denied*, 469 U.S. 883, 105 S.Ct. 251, 83 L.Ed.2d 188 (1984). MCP has failed to meet this burden.

■ MCP first argues that the award should not be confirmed because it is invalid under the laws of Pakistan. This argu-

ment is unavailing because it assumes that the laws of Pakistan were designated by the parties to apply to their agreement. While it is true that the Supplementary Agreement contained a choice of law clause selecting Pakistani law, the Arbitrator ruled that the Supplementary Agreement was invalid under both Pakistani and New York law. *See* Petition, Exh. C, ¶¶ 21–26. Thus, to accept MCP's Article V(1)(a) defense would require this Court to reverse one of the Arbitrator's express findings of law. This can only be done if the findings were made in "manifest disregard" of the law. The scope of the Court's review in this regard is extremely limited. *See Parsons*, 508 F.2d at 977. An examination of the Arbitrator's findings shows he carefully considered the applicable Pakistani law in ruling that the Supplementary Agreement was invalid. *See* Petition, Exh. C, ¶¶ 23, 24. Because his result is certainly a "colorable justification for the outcome reached," *see Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978), MCP's Article V(1)(a) defense is rejected.

■ MCP's defense under Article V(1)(c) is also rejected. That defense asserts that the Arbitrator decided matters beyond his authority. Article V(1)(c) is construed narrowly to advance the "enforcement-facilitating thrust of the Convention." *Parsons*, 508 F.2d at 976. In this case, there is no doubt that MCP consented to arbitration of the matters ultimately decided by the Arbitrator. *See* Petition Exh. A, ¶ 9. As was previously noted, MCP signed the Terms of Reference which set forth the issues to be arbitrated.

■ In its answer, MCP raises a defense under Article V(1)(d). *See* Answer ¶ 18. That provision of the Convention provides a defense if, "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the county where the arbitration took place." This is inapplicable in the instant case. MCP agreed to have the ICC Court of Arbitration select the arbitrator, *see* Connolly Affi-

davit, Exh. 1, and in the Terms of Reference accepted the arbitrator's jurisdiction and Geneva as the place of arbitration, along with its procedural rules. *See id.*, Exh. 5, ¶ (f)–(h).

■ Article V(1)(e) permits non-recognition of an arbitral award when it "has not yet become binding on the parties, or has been set aside or suspended by competent authority of the country in which, or under the law of which, that award was made." This provision does not assist the Respondent. The law under which this award was made was Swiss law because the award was rendered in Geneva, pursuant to Geneva procedural law. The Terms of Reference clearly spelled out that this law would apply. MCP asserts that the award was rendered under Pakistani law based on the Supplementary Agreement's choice of law provision. However, as mentioned earlier, this Court will not employ its view of the Supplemental Agreement's validity, or invalidity, and displace the view of the Arbitrator.

■ Respondent's contention based upon Article V(2)(b), that recognition of the award would be contrary to United States public policy is not pursuasive. This defense is very narrow and is only applicable when enforcement "would violate the forum state's most basic notions of morality and justice." *See Parsons*, 508 F.2d at 976. This is hardly such a case. Respondent urges that this Court conclude United States public policy would be offended by confirming an arbitral award in the face of a Pakistani judgment that the arbitration clause and proceeding were void. In fact, public policy would be violated if the Court declined to confirm the award. The Pakistani proceeding was, according to the Arbitrator, marked by MCP's "omissions and positive misstatements." Respondent had agreed to arbitrate, appeared in the proceeding, and then sought to circumvent the process. In light of this strategy, enforcing the award in no way violates this forum's notions of justice.

Finally, respondent's reliance on *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) as grounds to vacate the award

is misplaced. In *Wilko,* the Supreme Court held that Securities Act of 1933 claims were not arbitrable in domestic arbitration cases. However, in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court held federal securities laws claims arising under "a truly international agreement" are arbitrable pursuant to a broad arbitration clause. The Supreme Court followed this approach in the antitrust context in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Thus, *Wilko* in no way stands as an obstacle to the confirmation of the instant award.

■ Petitioner also moves for the imposition of Rule 11 sanctions. While this Court does not find any of MCP's arguments persuasive, neither does it find these arguments to be so frivolous as to warrant invocation of Rule 11.

### CONCLUSION

Petitioner's motion to confirm the arbitral award is granted and its request for Rule 11 sanctions against respondent is denied. Judgment shall be so entered.

SO ORDERED.