**CBS CORPORATION, et al., Plaintiffs,**

v.

**WAK ORIENT POWER & LIGHT LTD., Defendant.**

**No. CIV. A. 99–2996.**

United States District Court,
E.D. Pennsylvania.

April 12, 2001.

Jerome J. Shestack, Joseph C. Crawford, Wolf, Block, Schorr and Solis–Cohen, LLP, Philadelphia, PA, for Plaintffs.

Theodore R. Mann, Judah I. Labovitz, Mann, Ungar, Spector and Labovitz, P.C., Philadelphia, PA, for Defendant.

### *MEMORANDUM*

GILES, Chief Judge.

Pursuant to 9 U.S.C. § 207, Plaintiffs move this court to confirm the arbitral award rendered by the International Chamber of Commerce's International Court of Arbitration in *Siemens Westinghouse Service Company, Ltd., Raytheon–Ebasco Overseas Ltd., and CBS Corporation v. WAK Orient Power & Light Limited*, Case No. 10104/AC/DB., to enter judgment in accordance with that award, and to enjoin defendant from attempting to register any foreign judgment in any court of this country that may be arguably based on the subject matter of the arbitral award. Defendant has opposed the motion. For the reasons that follow, Plaintiffs' motion is granted.

### Factual Background

### I. The Power Plant Project

In March of 1994, the Government of Pakistan invited private entities to invest in electric power projects within Pakistan. (Partial Award[1], ¶ 2.1). WAK Orient Power & Light ("WAK"), a Pakistani company, proposed to install a barge-mounted power generating plant in Port Qasim, Karachi, Pakistan.(Partial Award, ¶ 2.2). The barge-mounted generating plant was to be built in the United States of America and towed to Port Qasim.(Partial Award, ¶ 2.3).

On December 17, 1994, WAK entered into an Implementation Agreement with the Government of Pakistan.(Partial Award, ¶ 2.4), and on January 18, 1995, WAK entered into a Power Purchase agreement with the Karachi Electric Supply Corporation. (*Id.*). These contracts required WAK to provide a letter of credit ("KESC letter of credit") of approximately eleven million dollars by June 7, 1995. (Partial Award, ¶ 2.9). The purpose of this letter of credit would be to secure liquidated damages which would become due to the Karachi Electric Supply Corporation should the proposed power plant not be-

[1] Plaintiffs' Motion to Confirm Arbitral Award and Enter Judgment, Exhibit B.

come commercially operable within a specified time period. (*Id.*)

In March of 1996, WAK entered into an Engineering Procurement Construction Contract ("EPC Contract") with a Consortium of Raytheon–Ebasco Overseas Limited ("REOL"), and Westinghouse International Service Company, Limited, a predecessor in interest to Siemens Westinghouse Service Company Limited ("SWSC"). (Partial Award, ¶ 2.5). The contract set forth terms for design and construction work by the consortium. (*Id.*).

The EPC Contract also required that any dispute arising from the contract be resolved through binding arbitration. Specifically, it stated:

*16.2 Arbitration*

Any dispute, controversy or claim of any nature whatsoever arising out of or relating to or in connection with this Contract (the "Dispute"), or the breach, termination or invalidity thereof, shall be referred to arbitration and finally settled in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC"). The parties hereby consent to arbitration thereunder.

. . .

*16.5 Finality*

The award of the arbitrators shall include detailed reasons for such award and shall be final and binding, and judgment upon the award may be entered, or application for judicial acceptance or confirmation of the award may be, in any competent court having jurisdiction thereof; including, but not limited to, the English courts.

(EPC Contract[2], Article 16). The contract also required that the arbitration take place in London and be governed by En-

glish law. (EPC Contract, Articles 16.2, 17.2).

To help achieve the level of credit required by the Implementation Agreement and the Power Purchase Agreement, WAK requested a letter of credit from Westinghouse Electric Corporation ("Westinghouse") on June 26, 1996.(Partial Award, ¶ 2.14). Westinghouse was the parent company of EPC Contract signatory, Westinghouse International Service Corporation. Westinghouse is a predecessor in interest to Plaintiff CBS Corporation ("CBS").

Westinghouse sent a letter of credit ("EPC Letter of Credit") to WAK on July 31, 1996. The letter stated:

Westinghouse pledges its financial support to fund engineering, procurement, and construction activities under the engineering, procurement, and construction (EPC) contract dated April 3, 1996 between WAK OP & L and the consortium of Westinghouse International Services Company, Limited and Raytheon–Ebasco Limited immediately upon receipt of written confirmation from the Private Power and Infrastructure Board (PPIB) that PPIB financial close has been achieved.

(Defendant's Appendix of Exhibits In Opposition to Plaintiff's Motion to Confirm Arbitral Award and Enter Judgment, # 2).

On July 11, 1997, the Pakistani Private Power and Infrastructure Board, a governmental organization, determined that WAK had failed to fulfill its obligation to provide the KESC letter of credit required by the Implementation Agreement.(Partial Award, ¶ 2.18). The organization terminated the Implementation Agreement. (*Id.*). On September 18, 1997, using the same reasoning, the Karachi Electric Sup-

**2.** Plaintiffs' Complaint for Declaratory and In-    junctive Relief, Attachment 1.

ply Corporation terminated the Power Purchase Agreement.(*Id.*).

## II. Civil Proceedings

On August 19, 1998, Plaintiffs SWSC and REOL, pursuant to the arbitration provision of the EPC contract, filed a request for Arbitration in London with the International Chamber of Commerce's Court of Arbitration, claiming that WAK had defaulted on payments that were owed to SWSC and REOL.(Partial Award, ¶ 2.21).

On September 7, 1998, aware of its agreement to arbitrate all claims related to the EPC contract, WAK filed a civil suit in Lahore, Pakistan against SWSC, REOL, and CBS. There, it claimed, among other things, that the EPC Letter of Credit constituted a pledge by SWSC, REOL, and CBS to provide the eleven million dollar KESC letter of credit for the benefit of WAK. (WAK's Complaint in Lahore Proceedings[3], ¶¶ 11–13). WAK claims that the Pakistani legal proceedings were not covered under the EPC Contract and were "outside the scope and sphere of same." (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitral Award, p. 3). There, WAK claimed that because SWSC, REOL, and CBS did not fulfill their pledge to provide the KESC letter of credit, the IA and PPA were terminated and the power plant project failed. (WAK's Complaint in Lahore Proceedings, ¶¶ 11–13; Terms of Reference, pp. 9–12).

Nearly two months after filing the civil suit in Lahore, WAK submitted an answer and counterclaims to the Court of Arbitration, making counterclaims there that were the same as the claims it had made before the civil court in Lahore.(Partial Award, ¶ 2.23). WAK also asserted a counterclaim against CBS, which had not previously been made a party to the arbitration proceedings.

On May 7, 1999, the Lahore trial level judge awarded WAK sixty billion rupees (over $1.4 billion) and ordered SWSC, REOL, and CBS to provide a $11.5 million letter of credit in favor of KESC. (Lahore Judgment[4], p. 22.). The Lahore judge determined that SWSC, REOL and CBS failed to "file a written statement." (Lahore High Court Judgment Sheet, p. 2). As a result, the judge determined that their defenses were stricken (*Id.*), including the defense that the Lahore civil proceedings should be stayed pending arbitration. (*Id.* at 3–4). SWSC, REOL, and CBS appealed the decision. (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitral Award, p. 4).

Later in May of 1999, prior to the end of the time period within which an appeal could be taken, WAK moved for recognition of the Lahore judgment both in the Court of Common Pleas of Philadelphia County, Pennsylvania and in the Court of Common Pleas of Montgomery County, Pennsylvania. In those courts, WAK registered the Pakistani judgment pursuant to the Uniform Foreign Money–Judgments Recognition Act, 42 Pa. P.S. § 22001 *et seq.* That act allows registration of a "foreign judgment that is final and conclusive and enforceable where rendered, even though an appeal therefrom is pending or it is subject to appeal." 42 Pa. P.S. § 22009. Judgment was entered in each court in favor of WAK and against SWSC, REOL, and CBS. These three named de-

---

**3.** Defendant's Appendix of Exhibits in Opposition to Plaintiffs' Motion to Confirm, # 1.

**4.** Plaintiffs' Reply Memorandum in Support of Motion to Confirm Arbitral Award, Exhibit D.

fendants were unaware of the proceedings in the United States courts since WAK did not provide notice to them. (Transcript of Proceedings Before this court, 6/16/99, p. 10).

On May 27, 1999, WAK moved this court to recognize the judgment of the Court of Common Pleas of Montgomery County under the federal statute which requires that full faith and credit be given to state judgments. See 28 U.S.C. § 1738. On June 10, 1999, this court entered judgment in favor of WAK after determining, in accordance with the statute, that WAK appended to its motion a copy of the Montgomery County Judgment, together with a state court seal and a state judge certification. Again, WAK provided no notice of the motion for judgment to SWSC, REOL, or CBS. (Transcript of Proceedings Before this court, 6/16/99, p. 10).

By June 14, 1999, SWSC, REOL, and CBS became aware that WAK had registered the Lahore judgment in several jurisdictions (*Id.* at 5), and filed the present action seeking, among other relief, an injunction requiring WAK to arbitrate all claims arising out of the EPC Contract.

On June 16, 1999, upon motion of SWSC, REOL, and CBS, and after consideration of oral arguments by all parties, the federal court judgment against SWSC, REOL, and CBS was vacated without prejudice and the court ordered WAK not to make any further attempts to register the Lahore judgment until further order from the court. On June 17, 1999, the two Court of Common Pleas judgments, and the challenges to those judgments, were removed by SWSC, CBS, and REOL to this court.

Meanwhile, the arbitration proceeding continued apace in London pursuant to the EPC contract. There, on June 23, 1999, all parties signed a document known as the Terms of Reference to Arbitration. This document specified the issues that the parties agreed they would submit to arbitration at the International Court of Arbitration. The Terms of Reference stated:

> The issues to be determined are those resulting from the parties [sic] submissions and which are relevant to adjudication of the parties [sic] respective claims and defences. In particular the Arbitral Tribunal may have to consider the following issues (but necessarily all of these or only these and not in the following order):—
>
> (1) whether an interim award should be issued:
>
>> (1) whether the Arbitral Tribunal should declare the claims submitted by Respondent [WAK] in its civil suit in Lahore are within the scope of the parties' arbitration agreement including claims against CBS Corporation, (formerly Westinghouse Electric Corporation) and that the Arbitral Tribunal has jurisdiction over said claims, which have also been submitted in the arbitration;
>>
>> (2) whether the arbitration should be stayed pending the outcome of proceedings in the Courts of Pakistan;
>
> (ii) whether Respondent committed any, and if so, what breaches of the EPC contract;
>
> (iii) whether the default (if any) of the Respondent under the EPC Contract gives Claimants a right to terminate the EPC Contract and, if so, pursuant to which provisions of the EPC;
>
> (iv) whether Claimants [SWSC, and REOL] are entitled to recover from the Respondent, and if so, what sums pursuant to the contract and/or by way of damages, compensation or interest under and in respect of the Contract;

(v) whether Claimants or either of them have committed any and if so, what breaches of Contract;

(vi) whether Respondent by means of the counterclaim is entitled to recover from the Claimants any and if so, what sums by way of damages, compensation, interest or set-off and/or and in respect of the Contract;

(vii) whether Claimants have a good defence to all or any of the said counterclaims;

(viii) whether as alleged by Respondent, Claimants (individually or in consortium) have any financial obligations in connection with the EPC contract or the Project;

(ix) the final award shall fix the cost of the arbitration, and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

(Terms of Reference to Arbitration[5], p. 14–15).

Nearly three months after signing the Terms of Reference, WAK wrote a letter to the tribunal claiming that the Terms of Reference should have no effect until after the appeals court in Pakistan ruled on the issue of whether WAK's claims against CBS had to be arbitrated. (Partial Award, ¶ 4.2). The Arbitral tribunal disagreed. (Partial Award, ¶ 4.4). Soon thereafter, WAK attempted to withdrawal its counterclaim against CBS from the proceedings. (Partial Award, ¶ 4.7). The tribunal held that under governing English law, a party could not unilaterally withdrawal any claim it had already agreed to arbitrate.(*Id.*).

On April 17, 2000, the International Court of Arbitration issued a Partial Award which decided two of the issues the parties submitted to arbitration. The court determined that, under English law, CBS could be joined in the arbitration proceedings even though it was not signatory to the EPC Contract. (Partial Award, ¶¶ 7.16, 8.3–8.4). The tribunal also determined that it would not stay the further arbitration proceedings pending civil proceedings in the courts of Pakistan. (*Id.* at 8.5).

On October 12, 2000, the Lahore High Court vacated the Lahore trial court's judgment, including the $1.4 billion dollar award in favor of WAK. The Lahore High Court determined that the lower court erred when it struck SWSC, REOL, and CBS's defenses. That court also determined that those parties had not been given the opportunity to file a written statement. (Lahore High Court Judgment Sheet, p. 8). Further, statements by the civil trial judge regarding SWSC, REOL, and CBS's delinquency in filing written statements seemed to the High Court to be erroneous. The High Court noted:

> After hearing the learned counsel for the parties and perusing the available record it has become clear to us that the impugned judgment and [illegible] is not sustainable. In the impugned order it was observed by the Civil Judge that ⅜ opportunities had been given to the appellants [SWSC, REOL, and CBS] to file the written statement but they have failed to do so. These observations are contrary to record which shows that only at one occasion i.e. 23.12.1998 the suit was adjourned at the request of appellants to file the written statement. On all other dates of hearing there were miscellaneous applications pending before the court which were to be disposed of.

**5.** Plaintiffs' Reply Memorandum in Support of Motion to Confirm Arbitral Award, Exhibit

A.

*(Id.* at p. 3). Accordingly, the Lahore High Court remanded the case to the trial court "for decision afresh after giving sufficient opportunity to the appellant to file the written statement." *(Id.).*

On December 18, 2000, the International Court of Arbitration issued its Final Award. It found in favor of SWSC, REOL, and CBS on all claims. The Award 1) ordered WAK to pay SWSC and REOL two million dollars, plus specified interest, 2) dismissed WAK's counterclaims on the merits in their entirety, 3) declared that SWSC, REOL, and CBS have no liability concerning construction financing or obtaining the KESC letter of credit, and 4) ordered that WAK pay SWSC, REOL, and CBS $762,000 in arbitration costs, plus specified interest. (Final Award [6], ¶¶ 16–16.5).

On January 15, 2001, SWSC, REOL, and CBS filed the instant motion to confirm the Final Award pursuant to 9 U.S.C. § 207. WAK opposed the motion on February 9, 2001. Since that time, SWSC, REOL, and CBS have filed a reply and WAK has filed a sur-reply.

### Discussion

**I. This Court Must Confirm the Arbitral Award Unless WAK Proves An Exception to Confirmation Exists.**

■ SWSC, REOL, and CBS seek to enforce the arbitral award from the International Court of Arbitration in this court. Section 201 of Title 9 of the United States Code states that "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 [hereinafter "the Convention"], shall be enforced in United States Courts in accordance with this chapter." Article I of the Convention states that it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between people, whether physical or legal." The Convention applies to the present arbitral award since it was awarded in England and SWSC, REOL, and CBS seek to enforce the award in the United States.

Federal law requires that United States courts confirm foreign arbitral awards falling under the Convention except in very limited circumstances. Section 207 of Title 9 of the United States Code states that:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

Because SWSC, REOL, and CBS moved for confirmation within three years of receiving their arbitral award, this court is required to confirm the arbitral award unless WAK can prove a ground for refusal as set out in the Convention.

The burden of proving an exception falls on the party opposing confirmation. Article V of the Convention states "Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if the party furnishes to the competent authority where the recognition and enforcement is sought, proof that [one of the exceptions to recognition applies]." The exceptions allowable under to the statute are set out in a footnote below.[7]

---

6. Plaintiffs' Motion to Confirm Arbitral Award and Enter Judgment, Exhibit A.

7. Article V of the Convention states:

Since this court concludes that neither of the two exceptions WAK attempts to prove is applicable to the arbitral award, 9 U.S.C. § 207 requires that the arbitral award be confirmed.

## II. WAK Cannot Prove that the Arbitral Award, as Applied to CBS, Went Beyond the Issues Submitted to Arbitration by Agreement.

One of the reasons that the Convention allows a court not to confirm a foreign arbitral award is if "the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." Article V(1)(c), Convention on the Recognition and Enforcement of Foreign Arbitral Awards. WAK claims that "[b]ecause WAK never agreed to arbitrate its dispute with CBS, this Court should refuse to confirm the Arbitral Award, at least insofar as it relates to the

claims of WAK and CBS, *inter se.*" (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitration Award, p. 18).

### 1) WAK Agreed to Arbitrate its Claim Against CBS in the Terms of Reference.

■ Despite its claim to the contrary, the record of the arbitration proceedings shows unmistakably that WAK agreed to submit to arbitration the question of whether the International Court of Commerce's Court of Arbitration had jurisdiction to join CBS as a party to the arbitration proceedings. In an International Court of Commerce arbitration, the Terms of Reference can include "a list of issues to be determined." (ICC Rules [8], Article 18(2)). A party to an arbitration is not required to sign the Terms of Reference. However, if a party "refuses to take part in the drawings up to the Terms of Refer-

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters

submitted to arbitration may be recognized and enforced; or
(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

8. Plaintiffs' Reply Memorandum in Support of Motion to Confirm Arbitral Award, Exhibit E.

ence or to sign the same, they shall be submitted to the [International Court of Arbitration] for approval." (ICC Rules, Article 18(3)). This step was not reached because WAK did sign the Terms of Reference. Under a section entitled "The issues to be determined," it was expressly stated that one of the issues that may be determined by the arbitral tribunal was:

whether the Arbitral Tribunal should declare the claims submitted by Respondent [WAK] in its civil suit in Lahore are within the scope of the parties' arbitration agreement including claims against CBS Corporation, (formerly Westinghouse Electric Corporation) and that the Arbitral Tribunal has jurisdiction over said claims, which have also been submitted in the arbitration...

(Terms of Reference, p. 14).

Further, in the Terms of Reference, WAK agreed that "The procedural rules governing this arbitration shall be the 1998 ICC Rules of Arbitration." (Terms of Reference, p. 17). Those rules state "if any party raises one or more pleas concerning the existence, validity, or scope of the arbitration agreement ... any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself." (ICC Rules, Article 6(2)). Therefore, WAK knew and agreed that if it raised a question about the scope of the arbitration agreement the arbitral tribunal would determine if it had jurisdiction to answer it.

Despite the unequivocal language above quoted, WAK now asserts that it never agreed to have the Court of Arbitration rule on the CBS jurisdiction question. As alleged proof of this assertion, WAK

states that when it later objected to inclusion of the CBS jurisdiction issue, the Arbitral Tribunal added a provision to the Terms of Reference which stated, "neither party is considered as having subscribed to or acquiesced in the summary of the other parties [sic] position set forth below." (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm, p. 14)(quoting Terms of Reference, p. 4). However, this provision simply states that by agreeing to the Terms of Reference, one party is not agreeing to the summary of position set out by the other. Therefore, this provision cannot reasonably be read as reflecting that the signers of the Terms of Reference did not agree to the issues to be determined.

The Terms of Reference include several sections that, unlike the "issues to be determined" section, set forth the position of a particular party.[9] The above-quoted provision refers to those sections as contrasted to the "issues to be determined" section.

■ WAK next argues that the Arbitration award should not be confirmed because "Counsel for WAK signed the Terms of Reference based on his 'understanding ... that the signing of these Terms of Reference does not in any manner prejudice [WAK's] claim in Pakistan,' to which the chairman of the tribunal replied: 'Absolutely.'" (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm, p. 14)(quoting Court of Arbitration Preliminary Meeting Transcript[10], 9/23/99, p. 35).

WAK claims that this exchange between WAK's counsel and the chairman of the

---

9. Such sections include "Claimant's claim," "Respondent's Response to Claimant's Claim," "Respondent's counterclaims," and "Claimant's response to Respondent's counterclaims." (Terms of Reference, pp. 5–13).

10. Defendant's Appendix of Exhibits in Opposition to Plaintiff's Motion to Confirm, # 5.

Tribunal is one of the "objections and conditions [that] prove that WAK ... never clearly and unmistakably consented to have the arbitrators decide their own jurisdiction." (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitral Award, p. 14). The subjective belief of WAK's attorney, regarding the effect that submitting an issue to binding arbitration in London might have in other jurisdictions, has no bearing on whether a United States federal court should approve an arbitral award pursuant to 9 U.S.C. § 207. The only relevant inquiries are whether the objecting party signed the Terms of Reference and whether the award deals with matters fairly within the scope of the issues submitted for arbitration. *See Parsons & Whittemore Overseas Co. v. RAKTA,* 508 F.2d 969, 976 (2d Cir.1974) ("[T]he court may be satisfied that the arbitrator premised the award on a construction of the contract and that it is not apparent that the scope of submission to arbitration has been exceeded." (Citation and quotation marks omitted)).

WAK signed the Terms of Reference and, under the broad arbitration clause of the EPC contract, the issues adjudicated cannot be said to be outside the scope of submission. Indeed, WAK must have believed its dispute with CBS was arbitrable because it filed the counterclaim against CBS that brought CBS into the arbitration picture.

The response of "Absolutely" by the Chairman of the Tribunal cannot reasonably be understood as suggesting that the arbitrators had agreed to do something that was prohibited under the Rules governing the arbitration proceedings, including English law. The response of "Absolutely" by the Chairman of the Tribunal can reasonably be understood as suggesting two things which are consistent with

the rules governing the arbitration: (1) while the arbitral tribunal could not instruct or bind the sovereign Pakistani courts, the arbitral tribunal was obligated to proceed under the Convention to do what the parties themselves had agreed to do—to arbitrate in good faith and to be bound by the arbitral award, leaving to the Pakistani courts their independent decisions on the matters before them; (2) since WAK was obligated to arbitrate all disputes of any type, arising from or related to, the EPC Contract, that whatever was being pressed in Pakistan in good faith could not be a matter subject to arbitration and, therefore, could not be prejudiced by the London arbitration.

In any event, the arbitration record itself shows that WAK's attorney fully understood that submitting the claims to arbitration did no more than fulfill WAK's contractual obligation and that Pakistani courts had the power to determine what right, if any, WAK had to litigate certain claims in that jurisdiction. The relevant excerpts from the Preliminary Meeting where WAK's counsel made his comment are set out below:

Mr. Zafar [WAK's counsel]: ... I have an understanding now that signing these Terms of Reference does not in any manner prejudice the Respondent's [WAK's] claim in Pakistan.

The Chairman [of the Court of Arbitration]: Absolutely.

Mr. Zafar: If that is the case, my clients' concern was, and that is what I am doing here, that if the Terms of Reference does prejudice in any manner the rights of Respondents in Pakistan, then I am not authorized to sign it. If it does not, then I do not have a problem and I am authorized to execute this. Mr. Schiller [counsel for SWSC and REOL]: Mr. Chairman, may I be heard?

The Chairman: Yes, indeed.

Mr. Schiller: Hopefully we have concluded the parties' comments on the Terms of Reference and they will be signed, and what a national court does with those Terms when it sees them is up to the national court, and what Respondent and Claimant may view as prejudicial or not prejudicial cannot be predicted, so I could not ask the Tribunal to promise me in my hope that I will be safe when I travel. In other words, whether or not signing these Terms of Reference affects your litigation is for the High Court to decide, is it not?

Mr. Zafar: Ultimately yes, but I think you are missing the point. The point I am trying to make is that as far as we are concerned we are signing these Terms of Reference without prejudice to any rights we have in Pakistan.

The Chairman: That is understood and accepted by the Tribunal. I will organize the amendments on the disk.

(Court of Arbitration Preliminary Meeting Transcript [11], 9/23/99, p. 35–36).

Further, when WAK signed the EPC Contract and the Terms of Reference, it agreed that it understood, as a matter of law, that it could not withdraw unilaterally from the obligation to arbitrate and attempt to litigate an arbitrable dispute before a different forum. The parties agreed that English law would govern its arbitration. The EPC Contract states that "the Arbitral Tribunal shall apply the laws of England in accordance of Article 17.2 of this contract." (EPC Contract, Article 16.4). Applicable legal principles mandated that WAK could not unilaterally withdraw a claim from consideration after it submitted such a claim to arbitration. Accordingly, the arbitral tribunal found in its partial award:

The Arbitral Tribunal is obliged to apply the laws of England in accordance with Article 17.2 of the EPC Contract, and in this connection, accepts the statement quoted by Counsel for the Claimants [SWSC and REOL] from the case of *Ron Jones Limited v. Hall* [April 7, 1988] Queens Bench Division (Official Referees' Business) "a party has also to comply with procedural rules which it has accepted in or by virtue of the arbitration agreement and with directions of the tribunal and compliance will also mean that it must find out and decide what its case [is] within such a framework. Once it has done so it cannot without the consent of the other party then withdraw a cause of action or defence with a view to its prosecution in separate proceedings against that other party for arbitration is a consensual process and is a submission to a particular tribunal."

(Partial Award ¶ 4.7).

English law also requires that

the reference in an agreement to a written form of arbitration clause or to a document containing an arbitration clause constitutes an arbitration agreement if the reference is such as to make the clause part of the agreement.

[English] Arbitration Act of 1996, § 6(2). The Arbitral Tribunal held that, as a matter of law, the EPC arbitration agreement was incorporated into the letter agreement associated with the EPC letter of credit "by virtue of the references made to the EPC contract." (Partial Award, ¶ 7.17). Thus, under law, the EPC Contract required WAK arbitrate a claim against CBS based on the EPC letter of credit.

A litigant challenging an arbitration award has a heavy burden when attempting to prove that an award should not be

---

11. Defendant's Appendix of Exhibits in Opposition to Plaintiff's Motion to Confirm, # 5.

confirmed because the award went beyond the terms submitted to arbitration pursuant Article V(c)(2) of the Convention. *See Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir.1992) ("The burden of proving that the Claims Tribunal exceeded its jurisdiction rests on respondents, as the party opposing confirmation of the award. Respondents' burden is substantial because the public policy in favor of international arbitration is strong." (Citations and quotation marks omitted)); *Parsons & Whittemore Overseas Co.*, 508 F.2d at 976 ("[Article V(1)(c)(2) ] should be construed narrowly ... [A] narrow construction would comport with the enforcement-facilitating thrust of the Convention."). Since WAK has not met the heavy burden of proof associated with claiming the arbitral award went beyond the terms of submission to arbitration, this court must confirm the award.

## II. WAK Cannot Prove that Confirming the Arbitral Award, as Applied to CBS, Would be Contrary to Public Policy.

■ The court could not confirm the arbitral award if WAK proved that "recognition and enforcement of the award would be contrary to the public policy" of the United States. *Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, Article V(2)(b). WAK claims confirmation of the award would violate public policy because "the decision of the Pakistani trial court as to arbitrability is entitled to recognition by this court as a matter of comity.... That is so *a fortiori* now that the appellate court has let that decision stand." (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm, p. 14).

Confirming the arbitration award would not be against the public policy of the United States. Not doing so, would. WAK is incorrect that the appellate court in Pakistan has let a decision as to the arbitrability of the claims with CBS stand. To the contrary, the appellate court in Pakistan ruled that CBS was never given the opportunity to argue that the claims were arbitrable because the trial court incorrectly struck CBS's defenses. (Lahore High Court Judgment Sheet, pp. 3–4). The appellate court remanded the case "for decision afresh after giving sufficient opportunity to the appellant to file the written statement." (*Id.*). As such, there is currently no valid decision by a Pakistani court which could be said to be entitled to recognition as a matter of comity or as a matter of law.

■ Further, the public policy exception is very narrow. *See Parsons & Whittemore Overseas Co.*, 508 F.2d at 973 ("An expansive construction of the this defense would vitiate the Convention's basic effort to remove preexisting obstacles to enforcement."). Courts have held that the exception is only applicable when "enforcement would violate the forum state's most basic notions of morality and justice." *Id.* at 976; *American Const. Machinery & Equip. Corp. v. Mechanised Construction of Pakistan Ltd.*, 659 F.Supp. 426, 429 (S.D.N.Y.1987). Given that WAK has not proven that confirming the award would violate this country's basic notions of morality and justice, the statute requires this court to confirm the arbitral award.

## III. WAK Cannot Prove that the Award Should Not be Confirmed As Applied to SWSC and REOL.

Part one of the arbitral award ordered WAK to pay SWSC and REOL two million dollars plus specified interest. (Final Award, ¶ 16.1). This part of the award was based on a default under the EPC Contract and did not include CBS as a

party.(Final Award, ¶ 5.22.2). As such, neither of the exceptions WAK raises in its opposition applies to this part of the award. WAK has never contended that it did not agree to arbitrate claims arising from the EPC contract. Further, WAK states in its Opposition Brief that its claim in the Lahore proceedings "is not covered under the EPC Contract and is outside the scope and sphere of the same." (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitral Award, p. 3)(quoting WAK's Complaint in Lahore Proceedings, ¶ 4). Moreover, there can be no logical contention that confirmation of this part of the award would be contrary to comity since WAK claims that the Lahore Proceedings are based on matters not arbitrable under the terms of the EPC Contract as construed by the arbitral award. Therefore, this court must confirm this part of the arbitral award because WAK has not proven, or attempted to prove, any of the exceptions to confirmation required by 9 U.S.C. § 207 and Article V of the Convention.

### Remedy

Since WAK has not proven any of the exceptions to confirmation of an arbitral award as required by 9 U.S.C. § 207 and Article V of the Convention, this court confirms the arbitral award and enters judgment in favor of SWSC, REOL, and CBS and against WAK in the amounts set out in the Arbitral Award.

■ Upon consideration of the letter to this court dated January 17, 2001 from SWSC, REOL, and CBS and WAK's response on pages 23–24 of its Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitral Award, this court enjoins WAK from attempting to register any judgment in contravention of this opinion and order.

■ WAK has stated in its Opposition brief that "the Pakistani Supreme Court may reinstate the money judgment and, if it does so, we should be entitled to enforce that judgment without seeking leave of court." (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitral Award, pp. 23–24). This court's confirmation of this arbitral award prohibits WAK from registering a reinstated Lahore Judgment in the United States. The Arbitral Tribunal has found, and this court has confirmed, that, among other things, 1) WAK was required to arbitrate any claims under the EPC letter of credit, and 2) SWSC, REOL, and CBS have no liability under the EPC letter of credit and have no liability concerning construction financing or obtaining the KESC letter of credit. Despite WAK's present protestations to the contrary, this court cannot see that there is any issue by and between the contracting parties and related to the EPC contract or the EPC letter of credit that is not subject to arbitration. WAK's expressed intention to attempt to obtain and register in the courts of the United States of America, without leave of this court, a foreign judgment arising from a subject matter relating to the arbitral award would run afoul of this court's judgment enforcing the Arbitral Award as well as the fundamental principles undergirding the Convention. Such intention is sufficiently disturbing as to warrant the exercise of equity jurisdiction for enforcement of the arbitral award and this court's obligations under the Convention.[12]. There-

**12.** *See generally, Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988); *Baker v. Gotz,* 415 F.Supp. 1243 (D.Del.1976). Under 28 U.S.C. § 2283, this court is allowed to issue an in-junction enjoining parties from proceedings in state court "to prevent state court litigation of an issue that was presented to and decided by the federal court." *Chick Kam Choo,* 486 U.S. at 147, 108 S.Ct. 1684.

fore, WAK is specifically restrained from attempting to register any Pakistani court judgment against SWSC, REOL, or CBS, that is arguably related to the subject matters of the arbitral award, in any court in the United States, state or federal, without application for an order of this court, and an order entered by this court after a hearing where all interested parties will have been given timely notice of its application and a reasonable opportunity to appear and participate in the hearing.

An appropriate order follows.

### Judgment Order

AND NOW, this ___ day of April 2001, for the reasons stated in the attached memorandum, it is hereby ORDERED as follows:

1. Whereas on December 18, 2000, an Arbitral Tribunal constituted under the auspices of the International Chamber of Commerce, entered an Award in *Siemens Westinghouse Service Company, Ltd.* ("SWSC"), *Raytheon–Ebasco Overseas Ltd.* ("REOL"), *and CBS Corporation* ("CBS") *v. WAK Orient Power and Light* ("WAK"), Case No. 10104/AC/DB in favor of SWSC, REOL, and CBS; and whereas that award 1) ordered WAK pay SWSC and REOL two million dollars plus specified interest, 2) dismissed WAK's counterclaims in their entirety, 3) declared that SWSC, REOL, and CBS have no liability concerning construction financing or obtaining the KESC letter of credit, and 4) ordered that WAK pay SWSC, REOL, and CBS $762,000 in arbitration costs plus specified interest; the Award is CONFIRMED and JUDGMENT is hereby ENTERED in accordance with the Award.

2. WAK is hereby RESTRAINED from attempting to register any Pakistani court judgment against SWSC, REOL, or CBS, arguably based on the subject matter of the Arbitral Award, in any court in the United States, state or federal, without order of this court.

3. All pending motions in the above captioned matter are DISMISSED as moot.