**August AASMA, et al., Plaintiffs,**

v.

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY, et al., Defendants.**

**No. 1:90 CV 2280.**

United States District Court,
N.D. Ohio,
Western Division.

Jan. 8, 2003.

Alan Kellman, Esq., Jaques Admiralty, Leonard C. Jaques, Esq., Detroit, MI, for Plaintiffs.

John S. Rea, Meyers, Hentemann & Rea, Cleveland, OH, William J. Stavole, Esq., Robert G. McCreary, Jr., Esq., Irene C. Keyse–Walker, Esq., Henry E. Billingsley, II, Esq., Arter & Hadden, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before this Court is Defendants' Motion for Order to Confirm Foreign Arbitral Award and to Enter Judgment (Doc. No. 89). For the following reasons, Defendants' motion will be granted.

## I. BACKGROUND

This matter arises from suits filed by merchant seaman who were employed by the now largely defunct States Steamship Company ("States"). Plaintiffs claim they were injured by exposure to asbestos during their service aboard States' vessels. Relative to the instant action, States was insured by two protection and indemnity associations,[1] including Defendants The West of England Shipowners Mutual Insurance Association (London) Ltd. and The West of England Shipowners Mutual Insurance Association (Luxembourg) [collectively "West"], a British insurer that insured States from 1959 to 1975.[2]

In 1986 Plaintiffs filed personal injury lawsuits against States in the Northern District of Ohio; however, States filed for bankruptcy in California in 1979, a bankruptcy plan was filed and approved in 1983, and the bankruptcy officially closed in 1991. Numerous complaints to which States never responded were filed and default judgments subsequently were entered in 1990. After entry of default, Plaintiffs filed a declaratory judgment action against the insurers, seeking a declaration that they were entitled to proceed directly against the associations for pay-

---

1. As explained by the Sixth Circuit:

 "A protection and indemnity association is not a traditional insurance company; it is a group of shipowners who have agreed to insure one another's vessels for the mutual benefit of all." *Psarianos v. Standard Marine, Ltd., Inc.,* 728 F.Supp. 438, 451 (E.D.Tex.1989). The associations function in a non-profit manner. They do not pay 'premiums' in the way that insureds pay premiums to their insurance carrier. Rather than pay premiums, the members of associations pay 'advance calls' to cover claims for the year; when claims exceed funds available, members must pay 'supplementary calls' to make up the shortfall. *See* Norman J. Ronneberg, Jr., An Introduction to the Protection & Indemnity Clubs and the Marine Insurance They Provide, 3 U.S.F. Mar. L.J. 1, 10 (1990/1991). Shippers band together in these associations because the unusual risks of the world-wide shipping industry render private insurance largely unavailable.
 *Aasma v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n., Inc.,* 95 F.3d 400, 404 (6th Cir.1996).

2. States also was insured by American Steamship ("American"), of which States was a member from 1975 to 1980. Unlike the States–West contract, the States–American contract did not contain an arbitration clause, and the Sixth Circuit thus made a substantive determination of claims against American. The court concluded that the 'pay first' clause in the States–American contract could not be set aside, thus defeating Plaintiffs' cause of action. *See id.*

ment of their claims. Their suits were complicated by the presence of a "pay first" or "pay to be paid" clause in the policies between the associations and States.[3]

Relying on an arbitration clause in its contract with States, West sought a stay pending arbitration. The case was eventually heard by the Sixth Circuit, *Aasma v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc.*, 95 F.3d 400 (6th Cir.1996). In concluding that "plaintiffs have no conceivable claim against West that does not derive from the contract between West and States," *id.* at 405, the Sixth Circuit determined that Plaintiffs stood in the shoes of States and thus were bound by the provisions in the States–West contract. The Sixth Circuit determined that the case should be arbitrated in England and decided under British law pursuant to the choice of law provision in the States–West contract. The court dismissed the case without prejudice pending the outcome of the arbitration in England.

The parties commenced arbitration in England in 1998, under the terms of the United Kingdom's Arbitration Act 1996 ("Act"), SI 1996/3146. The arbitrator concluded, *inter alia*, that payment must first be made by States to Plaintiffs before West could be held liable under the States–West contract. The arbitrator ruled for West as to all claims and assessed Plaintiffs with costs and fees total-

ing, with accrued interest,[4] well over $500,000.

Presently before this Court is West's Motion for Order to Confirm Foreign Arbitral Award and to Enter Judgment. Plaintiffs oppose this motion on numerous grounds. The Court addresses the parties arguments below.

## II. DISCUSSION

### A. The New York Convention

The instant matter is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention" or "New York Convention"), 21 U.S.T. 2517, 330 U.N. Treaty Ser. 38 (1958),[5] implemented as an amendment to the Federal Arbitration Act ("FAA") at 9 U.S.C. §§ 201–08 (2002), effective December 29, 1970. Section 207 of the FAA expresses a presumption that foreign arbitration awards will be confirmed:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court *shall* confirm the award *unless* it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added).

■ If the requirements of Article IV are met,[6] the award is to be confirmed,

---

**3.** "The 'pay first' clause, which is not a clause normally found in insurance policies, states that the Associations must indemnify States only in the event that States 'shall become liable to pay and shall pay' damages for events covered by the contract.'" *Aasma v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n., Inc.*, 95 F.3d 400, 402 (6th Cir.1996).

**4.** After considering the prevailing American prime and British base interest rates, the arbitrator set interest at eight percent, compounded quarterly, accruing from various dates,

contingent on the publication date of each of the three awards.

**5.** Adopted by the United Nations Conference on International Commercial Arbitration on June 10, 1958

**6.** Relevant to the instant action, Article IV requires the party seeking confirmation to supply an authenticated original or certified copy of the arbitration award and the original arbitration agreement or copy thereof. Plaintiffs do not challenge, and the Court finds no

unless one or more criteria of Article V are met.[7] The party opposing confirmation of a foreign arbitration award bears the burden of demonstrating one of the exceptions to confirmation. *See CBS Corp. v. WAK Orient Power & Light Ltd.*, 168 F.Supp.2d 403, 410 (E.D.Pa.2001).

## B. Plaintiffs' Objections to Confirmation of the Arbitral Award

Plaintiffs raise numerous substantive attacks against the arbitrator's decision, which this Court is without authority to hear.[8] Plaintiffs also specifically invoke Article V, sections 1(c) and 2(b) of the Convention. While not without sympathy for the plight of the afflicted seamen, the Court finds Plaintiffs' arguments unavailing and will confirm the arbitral award.

### 1. Article V, § 1(c)

Article V, § 1(c) permits a court to refuse recognition of a foreign arbitral award if the "award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." In the instant action, Plaintiffs assert that the award of costs is beyond the scope of the parties' arbitration agreement because "nowhere are costs or attorneys' fees specifically mentioned, much less agreed upon." Pls.' Resp. at 9. However, the parties agreement established that the arbitration was to be conducted in accordance with the Arbitration Act 1996. Sections 59–64 of the Act specifically provide for the awarding of costs and set forth

---

7. Under the Convention:

> 1. **Recognition** and enforcement of the award **may be refused**, at the request of the party against whom it is invoked, **only if** that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters

[8] The parties arbitration agreement specifically provides that disputes pertaining to the arbitration were to be submitted to the Commercial Court of the High Court of Justice in London, England. The record reflects that Plaintiffs have not pursued this avenue of appeal.

infirmity in, Defendant's Article IV submissions.

> submitted to arbitration may be recognized and enforced; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention, art. V (emphasis added).

default provisions in the absence of an agreement between the parties as to costs.

Saliently, section 63 of that Act provides that in the absence of an agreement regarding costs, an arbitrator "may determine by award the recoverable costs of the arbitration on such basis as it thinks fit." Arbitration Act 1996, ch. 23, § 63(3). Under the Act, "costs of the arbitration" is a term of art and includes arbitrators' fees and expenses, fees and expenses of the arbitral institution, and "the legal or other costs of the parties." *Id.*, ch. 23, § 59(1)(a)-(c). Based on the foregoing, the Court finds the award of costs to be within the scope of the parties' arbitration agreement.

The Court notes that the parties dispute the ostensibly contradictory language of section 61, which is drafted in terms of permissive language in the first paragraph, and mandatory in the second as to the award of costs.[9] As to the parties' arguments, it is sufficient to note that regardless of whether the award of costs is permissive or mandatory under the Act, it is clear that the Act vests an arbitrator with the authority to award costs.

### 2. Public policy arguments

Plaintiffs also assert that this Court may refuse to recognize the arbitral award pursuant to Article V, § 2(b) on the grounds that the award of costs and fees is contrary to public policy. Courts have construed the public policy exception narrowly, applying the exception only where "enforcement would violate the forum state's most basic notions of morality and justice." *Parsons & Whittemore Overseas Co. v. RAKTA*, 508 F.2d 969, 976 (2d Cir. 1974); *see also Indocomex Fibres Pte., Ltd. v. Cotton Co. Int'l, Inc.*, 916 F.Supp. 721, 727 (W.D.Tenn.1996).

Plaintiffs protest largely on the grounds that the award is contrary to the American Rule regarding attorney's fees. Plaintiffs characterize the award of costs and fees as "exorbitant and immoderate," punitive in nature, and issued by "an unsympathetic arbitrator in a foreign land." Plaintiffs argue that fees should not be awarded absent a showing of bad faith litigation tactics. Plaintiffs further assert that confirmation of the instant arbitral award would "reward West for hiring phalanxes of attorneys who ran up legal fees with unfettered abandon." Pls.' Resp. at 12.

Though under the American Rule parties normally bear their own costs of litigation, parties are free to contract regarding the apportionment of fees.[10] In the instant action, the parties' arbitration agreement was silent as to the award of fees, thus implicating the default provisions of the Arbitration Act 1996. Costs of arbitration are routinely awarded under the Act, and Plaintiffs were presumably aware of this

---

**9.** Section 61 states:

 (1) The tribunal *may* make an award allocating the costs of the arbitration as between the parties, subject to any agreement of the parties.

 (2) Unless the parties otherwise agree, the tribunal *shall* award costs on the general principle that costs should follow the event except where it appears to the tribunal that in the circumstances this is not appropriate in relation to the whole or part of the costs.

Arbitration Act 1996, ch. 23, § 61 (emphasis added).

**10.** The Court also notes that through *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,*

*Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) and its progeny, the Supreme Court has indicated that international comity, respect for the capacities of foreign tribunals, and the need for predictability in the resolution of international commercial disputes require enforcement of foreign arbitration agreements, even assuming that a contrary result might be reached in a domestic context. Courts have applied this rationale not only to the enforcement of arbitration agreements, but also to the enforcement of foreign arbitration awards.

fact but nonetheless chose to pursue the arbitration. Plaintiffs even concede that the award of costs under the Act "is left to the discretion of the arbitrator." Pls.' Resp. at 9.

| | |
|---|---|
| Richard Butler | |
| Arter & Hadden | |
| Kummer Kaempfer Bonner & Renshaw | |
| Nicola Gudbranson and Cooper | |

Plaintiffs suggested that the foregoing amounts be reduced to $20,000 to encom-

| | |
|---|---|
| Richard Butler | |
| Arter & Hadden | |
| Kummer Kaempfer Bonner & Renshaw | |
| Nicola Gudbranson and Cooper | |

The foregoing amounts were not merely arbitrarily assigned, but rather arrived at after careful consideration of the invoices, the nature of the case, and various mitigating circumstances.[11] The Court also notes that the arbitrator apparently gave the parties an opportunity to arrive at an agreement on costs, and rendered a decision only after the parties failed to come to a mutual agreement on the issue. *See* Third Award at 3, Defs.' Mot. Ex. E.

Based on the foregoing, the Court does not find the award of costs to violate the "most basic notions of morality and justice" of the American justice system. Nor does the Court find the amount of costs or interest to be punitive.[12]

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have failed to establish any grounds under the Convention for refusing to recognize and enforce the

As to the actual costs awarded, the records reveals that the arbitrator actually reduced the requested amount by a considerable sum. The invoices originally submitted are as follows:

| | |
|---|---|
| | £191,396.09 (excluding VAT) |
| | $140,231.27 |
| | $ 3,500 |
| | $ 4,335.63 |

pass all costs. The arbitrator ultimately awarded the following amounts:

| | |
|---|---|
| | £165,871.09 (excluding VAT) |
| | $ 85,202.22 |
| | $ 1,000 |
| | $ 4,335.63 |

arbitral award. Accordingly, Defendants' motion (Doc. No. 89) will be granted.

IT IS SO ORDERED.

---

**11.** The arbitrator cited, *inter alia*, duplication of work efforts, irrelevant submissions, difficulty in attributing time spent to prepare various reports, and the difficulty in quantifying fees for certain work as grounds for reducing the award of costs.

**12.** As to Plaintiffs' parenthetical suggestion that the interest component is punitive, the

Court has found numerous instances in which courts have confirmed awards that assessed interest rates in excess of the eight percent assessed in the instant action. *E.g., Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera Industrial Y Comercial,* 745 F.Supp. 172, (S.D.N.Y.1990) (surveying cases that upheld foreign arbitration awards assessing up to seventeen percent interest).